UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DIANE RENEE BATT,<br>      Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>      Defendant. | Case # 1:18-CV-92-DB<br><br>MEMORANDUM DECISION<br>AND ORDER |

## INTRODUCTION

Plaintiff Diane Renee Batt ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act") seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act, and her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned, in accordance with a standing order (*see* ECF. No. 10).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 7, 8. For the reasons set forth below, the Commissioner's motion (ECF No. 8) is **GRANTED**, and Plaintiff's motion (ECF No. 7) is **DENIED**.

## BACKGROUND

Plaintiff protectively filed for benefits under Titles II and XVI, on April 9, 2014. *See* ECF No. 6, Transcript (Tr.) Tr. 60, 70. She alleges disability beginning December 2, 2013, due to "heart attack, COPD, IBF, skin cancers, hypothyroid, arthritis, [and] high blood pressure." Tr. 61, 71. Plaintiff is insured for Title II, Social Security Disability benefits through September 30, 2016. Tr. 12. Plaintiff's applications were initially denied on August 20, 2014, after which she requested a

hearing. Plaintiff's hearing was held before Administrative Law Judge Melissa Lin Jones (the "ALJ") on October 13, 2016. Plaintiff appeared and testified at the hearing and was represented by counsel. Tr. 10, 22-59. A vocational expert ("VE"), Robert A. Mosely, also testified at the hearing. Tr.15. The ALJ issued a decision on December 5, 2016, finding that Plaintiff was not disabled under sections 216(i) and 223(d) of the Act with respect to DIB, and not disabled under sections 1614(a)(3)(A) of the Act with respect to SSI. Tr. 21. On November 20, 2017, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

Plaintiff was 48 years old at the onset of her disability and turned 50 in March of 2015. Tr. 15. She completed schooling through the 12th grade. Tr. 159. The last job Plaintiff held was as a tank cell operator for GM, making parts for radiators. Tr. 29-30. Plaintiff held this position from late August 2013, to December 2. 2013 (Tr. 24), when she alleges she was terminated because she was not working fast enough and failed to meet quotas (Tr. 29-31). Plaintiff had also performed work cleaning houses, parks, and a construction site, and babysitting her grandchildren. Tr. 31-36. At her October 13, 2016 hearing, Plaintiff testified that she became disabled on December 2, 2013. Tr. 24. She also testified that based on a doctor's recommendation, she purchased a cane for herself in 2014. Tr. 36. She stated she experienced daily back, neck and leg pain (Tr. 37-38) and took Tylenol or Motrin because she had a codeine allergy (Tr. 38-39, 51).

## LEGAL STANDARD

I. **District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C.

§ 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

3

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. Id. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At the first step of the sequential evaluation, the ALJ determined Plaintiff had not engaged in substantial gainful activity since December 2, 2013, her alleged disability onset date. Tr. 12. At step 2, the ALJ found that Plaintiff's coronary artery disease and degenerative disk disease were severe impairments, but her COPD, melanoma, sleep apnea, hypothyroidism, diabetes, and hypertension were not severe. Tr. 12-13. The ALJ further found that Plaintiff's irritable bowel syndrome, arthritis, and hernia were not medically determinable impairments. Tr. 13. At step 3, the ALJ found that none of Plaintiff's severe impairments met or medically equaled the severity of an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 13. Prior to proceeding to step four, the ALJ formulated Plaintiff's residual functional capacity ("RFC"), or the most she could still do despite her impairments, 20 C.F.R. § 404.1545. The ALJ determined that Plaintiff had the RFC to

perform light work[1] as defined in 20 CFR §§ 404.1567(b) and 416.967(b), except "[she] can occasionally climb stairs and ramps, but never ropes, ladders, or scaffolds and should avoid work in extreme heat, extreme cold, or weather." Tr. 13. Based on the RFC assessed, the ALJ determined at step four that Plaintiff could perform her past relevant work as a small products assembler. Tr. 15. Then, based on the VE's assessment and Plaintiff's testimony at the hearing, as well as Plaintiff's age, education, and work experience, the ALJ made an alternative finding at step five that there were other jobs existing in the national economy that Plaintiff could perform. Tr. 15-16. Thus, the ALJ concluded that Plaintiff had not been under a disability since the application was filed through the date of his decision. Tr. 15-16.

**II.    Analysis**

Plaintiff argues the ALJ erred at step two because she did not consider Plaintiff's non-severe and/or not medically determinable impairments, and therefore, the ALJ's RFC finding was erroneous. *See* ECF No. 7-1 at 23-28. Specifically, Plaintiff complains that the ALJ "erroneously impl[ied] her cardiac impairments were not problematic after she underwent stent placement on April 3, 2014." *Id*. at 26. Plaintiff also takes issue with the ALJ's finding that her arthritis was not medically determinable and with the ALJ's failure to address Plaintiff's alleged anxiety, necrotizing myopathy, and obesity. *Id*. at 23-24. Plaintiff further argues that the RFC finding is faulty because the ALJ did not consider Plaintiff's use of a cane. *Id*. at 28. According to Plaintiff, the ALJ's RFC determination "fail[ed] to draw a nexus between the RFC and the medical evidence

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

5

of record." *Id*. at 28. Contrary to Plaintiff's argument, however, the Court finds there is substantial evidence in the record to support the ALJ's RFC determination.

**A. The ALJ Appropriately Evaluated Plaintiff's Cardiac Impairments.**

With respect to Plaintiff's cardiac impairments, the record reflects largely unremarkable objective findings. *See e.g.*, Tr. 426, 885-86, 896, 883, 888-89. Plaintiff presented to the emergency room on March 26, 2014, with complaints of chest pain. Tr. 706, 711. A stress test was positive, and a physical examination was unremarkable with normal ranges of motion, normal strength and normal sensation. Tr. 706, 708, 714, 716-18. The visit record also notes that Plaintiff was mildly anxious. Tr. 718. The record further notes that Plaintiff was obese and was advised to maintain a reduced calorie diet. Tr. 714. A stress test for complaints of chest pain performed on March 27, 2014, revealed medium sized, moderate inferolateral ischemia, normal left ventricular wall motion, and ejection fraction of 80 percent. Tr. 443-44, 45, 755-56. Following an examination, Dr. Benjamin Rueda ("Dr. Rueda") assessed acute coronary syndrome/unstable angina with abnormal nuclear stress test with interlateral ischemia.[2] and transient left ventricular[3] cavity dilatation suspicious for more extensive ischemia. Tr. 730-32. Although Plaintiff often reported to other doctors that she had a prior myocardial infarction or heart attack, there is nothing in her records to indicate Plaintiff ever had a heart attack. Tr. 290-291, 916, 901. Ischemia is not infarction.

A cardiac catheterization on March 28, 2014, revealed normal left ventricular systolic function with an ejection fraction of 75 to 80 percent, normal left ventricular diastolic dysfunction

---

[2] Ischemia means reduced blood supply from the coronary arteries. Cardiac ischemia alone can cause chest pain known as angina. DALE DUBIN, MD, RAPID INTERPRETATION OF EKG'S 66 (6th ed. 2000) ("DUBIN").
[3] The left ventricle is the thickest chamber of the heart, responsible for pumping blood to all parts of the body. *Id*. 261.

(sic),[4] and coronary atherosclerosis. Tr. 290-91, 458-60. On April 3, 2014, Plaintiff had a stent placed in the mid-right coronary artery. Tr. 321-22, 462-64. A physical exam by Ashish Bhatia, M.D. ("Dr. Bhatia") on March 31, 2015, was unremarkable and an EKG taken during the visit was normal. Tr. 484. It was noted that Plaintiff had stopped taking her prescribed beta blocker for several weeks because her insurance did not cover it., and she was set up to wear an outpatient Holter monitor[5] for 30 days. Tr. 484.

On May 27, 2015, Plaintiff had a follow-up visit with Dr. Bhatia, during which she reported a significant improvement in her palpitations after she was reinitiated on Metoprolol. Tr. 493. The Holter monitor results were within normal limits. *Id*. Plaintiff denied chest pain, shortness of breath, palpitations, lightheadedness or syncope. *Id*. A physical exam was unremarkable, and an EKG showed normal sinus rhythm. *Id*. Plaintiff was instructed to continue taking Metopolol. Tr. 494. It was further noted that although Plaintiff complained of minor fatigue, the 30-day outpatient Holter monitor showed that she was in normal sinus rhythm with no arrhythmias.[6] Tr. 494. A stress test completed in March 2016 demonstrates that the left and right ventricles are normal. The EKG was nondiagnostic for ischemia, and the left ventricular ejection fraction was 70 percent. Tr. 587. Plaintiff also had no significant vascular/arterial insufficiency. Tr. 881.

While Plaintiff asserts that her cardiac impairment limited her ability to perform work-related activities beyond the RFC already found by the ALJ (*see* ECF No.7-1 at 22-25), she failed

---

[4] The report of the actual study (Tr. 291), versus the correspondence summarizing the study (Tr. 458), shows *normal* ventricular function; thus, the Court assumes, in the absence of contrary medical evidence such as the presence of heart failure, the notation in the correspondence stating "ventricular diastolic dysfunction" is a typographical error.
[5] A Holter monitor, also called an ambulatory electrocardiogram ("ECG"), is a battery-operated portable device that measures and records the heart's activity continuously. *See* https://www.heart.org/en/health-topics/heart-attack/diagnosing-a-heart-attack/holter-monitor (last checked June 3, 2019).
[6] On a normal ECG, also referred to as an EKG, the heart rate is between 60-100 beats per minute. The rhythm is regular (both P-P and R-R intervals). The P waves are normal in shape, upright, and appear before the QRS complex. The QRS complex has normal morphology and its duration is less than 0.12 second. This is normal sinus rhythm. Any deviation from the heart's normal electrical rhythm is called an arrhythmia or sometimes also a dysrhythmia. 3 BRYAN E. BLEDSOE, RICHARD A. CHERRY, AND ROBERT S. PORTER, PARAMEDIC CARE PRINCIPLES AND PRACTICES 75 (5th ed. 2000).

to provide medical evidence in support of this argument. As discussed above, the objective findings made by Dr. Rueda and Dr. Bhatia with respect to Plaintiff's cardiac impairments were largely unremarkable, and the ALJ's RFC finding is consistent with those unremarkable findings. Accordingly, there is substantial evidence in the record to support the ALJ's assessment of Plaintiff's cardiac impairment, and the Court finds no error.

### B. The ALJ Appropriately Considered Plaintiff's Non-Severe Impairments.

Plaintiff first argues that even though the ALJ noted an MRI finding of advanced arthritis in the lumbar spine, from L3-4 through L5-S1, the ALJ failed to explain her finding that Plaintiff's arthritis was not a medically determinable impairment. *See* ECF 7-1 at 24. Plaintiff had at least two abdominal CT scans which noted arthritis of her lower lumbar spine particularly at L4-L5. Tr. 284, 958-59. An abdominal CT scan on February 12, 2014 noted "advanced degenerative changes of the lumbar spine." Tr. 284. She also had x-rays and MRI studies in June 2014, which noted degenerative disc disease at L4-L5 and L5-S1. Tr 422. Another abdominal scan performed on August 16, 2016 noted "advanced arthritis of the spine lower levels particularly at L3-L4 through L5-S1 with developmental stenosis." Tr. 958-59. The August 2016 scan showed arthritis, or more appropriately osteoarthritis,[7] in the lower lumbar spine in the same location that other studies noted degenerative disc disease. Tr. 958-59. A MRI study in May 2011 also noted arthritis in the same level of the lumbar spine. Tr. 244. A contemporaneous study in April 2011 found that the changes in this area were relative moderate. Tr. 247. In sum, nothing in the medical evidence of record noted that Plaintiff was under separate limitations as a result of arthritis.

---

[7] Osteoarthritis is defined as a "noninflammatory degenerative joint disease occurring chiefly in older persons, characterized by degeneration of the articular cartilage, hypertrophy of bone at the margins, and changes in the synovial membrane . . . accompanied by pain . . . and stiffness." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1199 (28th ed. 1994)

Plaintiff's arthritis history notwithstanding, the Court finds the ALJ's RFC assessment is consistent with generally unremarkable objective medical findings of record including findings of normal muscle strength, no muscle atrophy, and full ranges of joint motion. Tr. 269, 420, 426, 429-30, 480-81, 497, 632-33, 706, 708, 785, 822-23, 825-26, 833-34, 885-86, 888-89, 896, 903. The RFC is also consistent with the opinion of consultative examiner Samuel Balderman, M.D., who examined Plaintiff in June 2014 and opined that Plaintiff had only moderate limitations in lifting, carrying, climbing, pushing and pulling. Tr. 421. *See Nelson v. Colvin*, 12-CV-1810, 2014 WL 1342964, *12 (E.D.N.Y. March 31, 2014) (stating that an ALJ's finding that a plaintiff could perform light work was supported by the doctor's opinion that the claimant had mild-to-moderate limitations to her ability to sit, stand and walk (citing *Lewis v. Colvin*, 548 F. App'x 675, 678 (2d Cir. 2013)).

Furthermore, any error with respect to Plaintiff's arthritis diagnosis was harmless, since the ALJ already determined that Plaintiff had a severe lumbar spine impairment that limited her to the performance of light work as a result. Tr. 12-13. Thus, Plaintiff failed to show how arthritis resulted in any functional limitations beyond those already noted by the ALJ, and no physician precluded or limited Plaintiff's functional abilities due to arthritis.

Plaintiff also contends that the ALJ's failed to evaluate Plaintiff's mental impairments, obesity, or myopathy at any step of the sequential evaluation, and such failure when determining Plaintiff's RFC is not harmless error. *See* ECF No. 7-1 at 27. Plaintiff first argues that the ALJ erred in not discussing her anxiety. Anxiety was not an alleged impairment (*see* Tr. 61, 71), and the issue did not come up until Plaintiff's hearing when Plaintiff's counsel questioned her about it. *See* Tr. 42. The hearing transcript contains the following testimony on the issue of Plaintiff's anxiety.

> Counsel: Okay. Do you – and you have been diagnosed you said, with some degree of anxiety. Is that right?
>
> Plaintiff: Yes.
>
> \*\*\*
>
> ALJ: Mr. Falk, is there a diagnosis of anxiety from an acceptable medical source in the medical evidence?
>
> Counsel (to Plaintiff): I'm not sure. I don't think – you haven't been treating with a psychologist or psychiatrist –
>
> Plaintiff: No.
>
> Counsel: -- have you?
>
> Plaintiff: No.
>
> Counsel (to ALJ): I guess not.

Tr, 42-43. Inexplicably, Plaintiff's counsel now takes issue with the ALJ's reliance on his client's testimony, as well as his own representation at the hearing, as an officer of the Court, regarding the fact that Plaintiff had not been treated for anxiety. Tr. 43. Moreover, Plaintiff has the burden of showing a medically determinable impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) ("The Secretary . . . has express statutory authority to place the burden of showing a medically determinable impairment on the claimant."). In this case, there is no record of treatment or medication for an alleged condition that counsel admitted was not in the medical evidence. The record also reflects that on several occasions Plaintiff denied having anxiety. Tr. 219, 221, 223, 227, 251. Based on the foregoing, no further discussion on this subject is warranted.

Plaintiff also argues the ALJ erred in failing to consider Plaintiff's obesity at any step of the sequential evaluation. *See* ECF No. 7-1 at 24. Courts in this Circuit have held that "there is no obligation on an ALJ to single out a claimant's obesity for discussion in all cases." *See Ingianni v. Comm'r of Soc. Sec.*, 2014 WL 1202624 (N.D.N.Y. March 14, 2014) (citing *Cruz v. Barnhart*, 04 CIV 9011, 2006 WL 1228581, at \*9 (S.D.N.Y. May 8, 2006)); *Mancuso v. Astrue*, No. 1:06–CV–

930 (GLS), 2008 WL 656679, at *5–6 (N.D.N.Y. Mar. 6, 2008) (the ALJ did not err by failing to specifically address whether plaintiff's obesity was a severe impairment), *aff'd*, 361 F. App'x 176, 178 (2d Cir. 2010). Furthermore, an ALJ may implicitly consider Plaintiff's obesity in the listing and RFC analysis by relying on medical opinions which, although not specifically referencing limitations due to obesity, make overall assessments of Plaintiff's limitation with clear awareness of his or her weight. *See, e.g.*, *Drake v. Astrue*, 443 F. App'x 653, 657 (2d Cir. 2011) (the ALJ implicitly factored plaintiff's obesity into his RFC determination by relying on medical reports that repeatedly noted plaintiff's obesity and provided an overall assessment of her work-related limitations); *Paulino v. Astrue*, 08 Civ. 02813, 2010 WL 3001752, at *18–19 (S.D.N.Y. July 30, 2010) (although the ALJ failed to mention plaintiff's obesity when conducting step-three listing analysis, he satisfactorily considered the effects of plaintiff's obesity by relying on evaluations by doctors who accounted for the claimant's obesity (collecting cases)).

In this case, Plaintiff never alleged that her weight had any impact on her ability to work. Furthermore, the ALJ mentioned Plaintiff's weight and/or body mass index ("BMI") throughout the record; thus, the ALJ was well aware of Plaintiff's obesity. Tr. 497, 714, 886. Notably, no physician opined that Plaintiff's ability to work was limited by her weight. Plaintiff only speculates that her weight impacted her ability to work. *See* ECF No. 7-1 at 24-25. However, Plaintiff's unsupported and conclusory assertions are not sufficient to establish a severe impairment. *See generally Britt v. Astrue*, 486 Fed. App'x 161, 163 (2d Cir. 2012) (ALJ did not err in finding that obesity was not a severe impairment where the claimant "did not furnish the ALJ with any medical evidence showing how the [ ] alleged impairment[ ] limited his ability to work"); *see also Mancuso v. Astrue*, 361 Fed. App'x. 176 (2d Cir. 2010) (no factual basis for thinking that Mancuso's obesity

limited her ability to perform light work where medical reports referencing Mancuso's weight failed to identify limitations therefrom).

Plaintiff also argues the ALJ failed to meaningfully discuss her diagnosis of necrotizing myopathy. *See* ECF No. 7-1 at 25. Plaintiff points out that the ALJ mentioned the diagnosis of necrotizing myopathy only in the context of Plaintiff's spinal impairment and failed to consider it as a separate condition or as an explanation for Plaintiff's fatigue and weakness. *Id.* (citing Tr. 14, 898-907). On January 5, 2016, Plaintiff was examined by neurologist Tomas Holmlund, M.D. ("Dr. Holmlund"). Tr. 901-05. Dr. Holmlund performed an EMG on January 20, 2016. Tr. 906-07. The EMG on the left extremities was essentially normal. Tr. 907. The study report noted that, taking into account the hypo-activation of the lower limb, which could be attributed to pain, poor volitional effort or upper motor lesion, there was no electrodiagnostic evidence of a myopathy, left cervical or lumbosacral radiculopathy. Tr 907.

In December 2015, Plaintiff was seen by Roger Warren Rogers, D.O. ("Dr. Rogers"). Tr. 916-17. Dr. Rogers noted absence of notable limp or abnormality. Tr. 917. She was able to heel walk and toe walk without difficulty; she was able to fully squat without difficulty; and she was able to flex and extend to 25% with reported pain. Tr. 917. However, Dr. Rogers noted that Plaintiff's straight leg raises were negative. *Id.* Dr. Rogers also noted that Plaintiff gave "minimal effort with manual muscle testing" even though various strengths were rated a 4/5. Tr. 917.

Finally, Plaintiff's claim that the RFC is faulty because the ALJ did not consider Plaintiff's alleged need for an assistive device is unavailing. *See* ECF. No. 7-1 at 28. While Plaintiff testified that she purchased a cane for herself upon a doctor's recommendation (Tr. 36), there is no record that Plaintiff was ever prescribed an assistive device by any of her physicians. Although some of the medical records indicate that Plaintiff used a cane to ambulate on some occasions (Tr. 782-83,

917), the medical record overall contains more assessments from physicians who observed Plaintiff walking normally, without any cane or assistance. Tr. 272-73, 419, 426, 633, 774, 766, 785, 778, 792, 812, 823, 826, 829, 831, 833, 840, 883, 886, 896, 903. Further, Plaintiff was able to drive, shop for groceries, prepare simple meals, take care of her personal hygiene, and perform household chores, such as laundry. Tr. 39, 41, 49, 273, 903. Moreover, although she testified that she had a history of falls (Tr. 36), the medical record contradicts this testimony. Tr. 770, 780, 785, 828-29, 917, 921. Therefore, there was substantial evidence before the ALJ indicating Plaintiff could ambulate effectively, and the Court finds no error in the ALJ's RFC finding. *See Hernandez v. Comm'r of Soc. Sec.*, No. 1:16-CV-07584 (ER) (SDA), 2018 WL 3300693, at *14 (S.D.N.Y. Feb. 15, 2018), *report and recommendation adopted sub nom. Hernandez v. Berryhill*, No. 16 CIV. 7584 (ER) (SDA), 2018 WL 1581688 (S.D.N.Y. Mar. 28, 2018); *see also Urbanak v. Berryhill*, No. 17 CIV. 5515 (CM) (HBP), 2018 WL 3750513, at *26 (S.D.N.Y. July 18, 2018), *report and recommendation adopted*, No. 17 CIV. 5515 (CM) (HBP), 2018 WL 3745667 (S.D.N.Y. Aug. 7, 2018) (the ALJ properly found that Plaintiff's statements as to the limiting effects of her symptoms, including her alleged need for a cane to ambulate, were not wholly credible and that her list of daily activities supported a light work RFC finding). Furthermore, even if the ALJ erred in not including a cane requirement in the RFC finding, as explained above, such an error would be harmless because Plaintiff bears the burden of proof that she is disabled under the Act. *Bowen*, 482 U.S. at 146.

When the district court is "presented with the not uncommon situation of conflicting medical evidence, . . . . [t]he trier of fact has the duty to resolve that conflict." *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources

cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). In this case, the ALJ weighed the record as a whole in formulating her RFC finding and provided good reasons supported by substantial evidence for her conclusions.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 13) is) is **DENIED**, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 15) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE